UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANDES INDUSTRIES, INC. and PCT INTERNATIONAL, INC.,<br><br>        Plaintiffs,<br><br>vs.<br><br>CHEN SUN LAN; KUN-TE YANG; CHI-JEN LAN; POLAR STAR MANAGEMENT, LTD.; EZCONN CORPORATION; and EGTRAN CORPORATION,<br><br>        Defendants. | Case No. 2:14-cv-00400-APG-GWF<br><br>**ORDER**<br><br>**Motion for Leave to Conduct Jurisdictional Discovery - #35, #38** |

        This matter is before the Court on Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (#35, #38), filed on September 17, 2014.  Defendant eGTran Corporation filed its Opposition (#57) on October 6, 2014.  Plaintiffs filed their Reply (#60) on October 16, 2014.  The Court conducted a hearing in this matter on October 22, 2014.

**BACKGROUND**

        Plaintiffs filed their complaint in this action on March 18, 2014.  Plaintiff Andes Industries, Inc. ("Andes") alleges that it is a closely held Nevada corporation and that its principal place of business is located in Mesa, Arizona.  *Complaint (#1)*, ¶ 8.  Plaintiff PCT International, Inc. ("PCT") is also a closely held Nevada corporation with its principal place of business located in Mesa, Arizona.  Andes owns all outstanding shares of PCT.  ¶ 9.  Plaintiffs allege that individual Defendants Cheng Sun Lan, Kun-Te Yang, and Chi-Jen ("Dennis") Lan are residents of Taiwan. ¶¶ 11-13.  Defendants Polar Star Management Ltd. ("Polar Star") is a Taiwanese corporation, with places of business in Taiwan.  ¶ 14.  Defendant EZconn Corporation ("EZconn") is a Taiwanese corporation, with places of business in Taiwan and the Peoples' Republic of China.  ¶ 15.

Defendant eGTran Corporation ("eGTran") is a British Virgin Islands corporation, with a principal place of business in Taiwan. ¶ 16.  Plaintiffs allege that at all times relevant to this action, Defendants Polar Star, EZconn, and eGTran were owned and controlled by Defendant Chen Sun Lan, who is referred to throughout the complaint as "Mr. Lan" to distinguish him from Co-defendant Chi-Jen ("Dennis") Lan.  Plaintiffs allege that all of the corporate defendants' actions were directed and controlled by Mr. Lan. ¶¶ 14-16.  Defendants Kun-Te Yang, Chi-Jen ("Dennis") Lan, and Polar Star are shareholders of Plaintiff Andes, through whom Defendant Mr. Lan allegedly "indirectly owns and controls his ownership interest in Andes." ¶¶ 12-14.

The complaint alleges that PCT is engaged in the business of designing and developing a variety of products, including coaxial cable connectors, improved coaxial cable and amplifiers, many of which are protected by U.S. Patents. ¶¶ 18, 19.  PCT "maintains strict confidentiality over its proprietary product designs, technical information regarding the products it sells, the prices at which it purchases those products, and its sales and marketing strategies." ¶ 22.  In or about 1997, PCT, through its president and founder, Steve Youtsey, engaged EZconn, through its principal Mr. Lan, as PCT's "contract manufacturer" and provided EZconn "with detailed confidential technical information regarding its proprietary product designs, including PCT's amplifiers and patented coaxial cable connectors." ¶¶ 24-26.  The written purchase orders between PCT and EZconn contained "Terms and Conditions" which provide that "any items, tools, materials, data, technical information and intellectual property developed by PCT" remains its property and shall not be reproduced by EZconn without prior express written authorization by PCT, and are also subject to a confidentiality agreement between the parties. ¶ 27.

The complaint alleges that "several years" after PCT first engaged EZconn as its contract manufacturer, EZconn was acquired by eGtran.  Following this acquisition, EZconn held itself out as "an eGtran company."  Plaintiffs allege on information and belief that following eGtran's acquisition of EZconn, eGtran directed and controlled the operations of EZconn.  "For example, . . . EZconn and eGtran shared a common CEO, and eGtran controlled the channels of communication through which PCT communicated with EZconn." ¶ 29.

. . .

As stated above, Plaintiffs allege that Mr. Lan indirectly owns shares in Andes through Co-Defendants Kun-Te Yang, Chi-Jen ("Dennis") Lan, and Polar Star, The complaint further alleges that at some unspecified time, Mr. Lan requested to become a shareholder in Andes and that Plaintiff allowed him to do so. Mr. Lan, however, chose to hold his shares in the name of Defendant Kun-Te Yang. ¶ 35. "After becoming an indirect shareholder of Andes, Mr. Lan used his insider status to negotiate loan agreements with PCT by which he obtained, directly or indirectly, promissory notes and security interests in Andes treasury stock and PCT's valuable intellectual property, including the '422 and '631 Patents." ¶ 38. Mr. Lan also allegedly loaned funds to PCT in Co-Defendant Dennis Lan's name. Dennis Lan subsequently converted the promissory note securing one of the loans to become a shareholder of Andes. ¶¶ 40-41. Additional loans were also executed in the name of Defendant Kun Te Yang which were also converted into Andes shares in Kun Te Yang's name at the direction of Mr. Lan. ¶ 43. Mr. Lan later directed Polar Star to acquire shares in Andes. ¶ 44-45.

The complaint alleges that "[c]onsistent with the close relationship among its shareholders, Andes has operated much like a partnership, with no shareholder holding a majority position. Andes has not held formal shareholder meetings or elections. Rather, most substantial business decisions for PCT were addressed through communications between Mr. Lan and Mr. Youtsey. These communications were usually facilitated by English speaking representatives of EZconn and/or eGtran." ¶ 46. The complaint further alleges that "[t]hrough their relationships with PCT, the Defendants obtained access to PCT's most confidential proprietary information, including PCT's proprietary product designs and other intellectual property, technical information regarding the products PCT sells, the prices at which PCT purchases these products, the books and records of Andes and [PCT], and PCT's sales and marketing strategies." ¶ 47. Plaintiffs allege that by virtue of their relationships with PCT, each of the Defendants owed PCT a fiduciary duty. ¶ 48.

The complaint alleges that Defendants secretly usurped PCT's confidential proprietary information for their own financial benefit to the detriment of PCT and its other shareholders. ¶ 49. "EZconn, upon information and belief acting under the direction and control of eGtran and Mr. Lan, has sought to convert PCT's intellectual property by secretly filing patent applications

claiming as its own intellectual property belonging to PCT." ¶ 50. "EZconn, upon information and belief acting under the direction and control of eGtran and Mr. Lan, filed these patent applications without license or permission from PCT.  Indeed, none of the Defendants ever disclosed the existence of these patent applications to PCT and took active steps to hide its misconduct from PCT." ¶ 51.

The complaint alleges twelve causes of action against Defendants, eleven of which include claims against Defendant eGtran.  The causes of action are for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, usurpation of corporate opportunities, tortious interference with contract, tortious interference with prospective economic advantage, fraud, constructive fraud, breach of the implied duty of good faith and fair dealing, unfair competition, unjust enrichment and civil conspiracy.  Plaintiffs also allege a cause of action for breach of contract against EZconn, but not against the other Defendants.

To date, only Defendant eGtran has been served with the complaint.  On August 25, 2014, eGtran filed a Motion to Dismiss Complaint for Lack of Personal Jurisdiction, Improper Venue, Forum Non Conveniens and Failure to State a Claim.  (#18).  In response to eGtran's motion to dismiss for lack of personal jurisdiction, Plaintiffs filed the instant motion for jurisdictional discovery.  Defendant eGtran argues in its motion to dismiss and in its opposition to Plaintiffs' motion for jurisdictional discovery that this Court lacks personal jurisdiction over any of the Defendants because none of them reside in Nevada and none of the acts and conduct alleged in the complaint occurred in Nevada.  eGtran argues that the fact that Plaintiffs are Nevada corporations is not alone sufficient to establish personal jurisdiction over the Defendants.  It therefore argues that permitting Plaintiffs to conduct jurisdictional discovery in an effort to support personal jurisdiction over eGtran as the alter ego or agent of Mr. Lan or EZconn would be pointless.  eGtran further argues that Plaintiffs have failed to make a sufficient showing to support jurisdictional discovery under theories of alter ego, agency or conspiracy.

Plaintiffs argue that this Court has personal jurisdictions over the Defendants because their wrongful acts arise out of their actual or *de facto* shareholder relationships with Nevada corporations, which give rise to fiduciary duties that Defendants have breached.  Plaintiffs also rely

on Section 8.5 of the Bylaws of Andes Industries, Inc. which provides as follows:

> SECTION 8.5 Governing Law.  These Bylaws shall be governed exclusively by their terms and by the laws of the State of Nevada without regard to the State's rules concerning choice of law. Each person acquiring Stock in the Corporation consents to jurisdiction and venue in Nevada and where the principal office of the Corporation is located, which is currently Arizona, but an action under these Bylaws may be brought in any forum having jurisdiction.

*Declaration of Brandon Wilson in Support of Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery (#40), Exhibit 1, pg. 22.*

The Bylaws state that they were adopted by all of the directors of Andes Industries, Inc. "effective as of the 23rd day of June, 2000" and bear the signatures of directors Steven Youtsey and Ronald Clark. *Id., pg. 24.*

## DISCUSSION

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13 (1978). *Laub v. U.S. Department of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003), states that "[a] district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Id. Laub* further states that "'discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id.,* 342 F.3d at 1093, quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).  A plaintiff is not required to make a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery. *Liberty Media Holdings, LLC v. Letyagin*, 925 F.Supp.2d 1114, 1120 (D.Nev. 2013), citing *Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 WL 3515759, *3 (N.D.Cal. 2010).  Where further discovery on an issue might well demonstrate facts sufficient to constitute a basis for jurisdiction, it is an abuse of discretion to deny it. *Harris Rutsky & Co. Ins. Serv. v. Bell & Clements*, 328 F.3d 1122, 1135 (9th Cir. 2003).

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *CollegeSource, Inc. v. Academeyone, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011), citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under *International Shoe*, personal jurisdiction over a defendant may be established by showing that it has such continuous and systematic contacts with the forum that it is generally subject to suit in the jurisdiction ("general jurisdiction"), or by showing that the defendant has sufficient minimum contacts with the forum arising out of, or relating to the transaction that is the subject matter of the litigation ("specific jurisdiction"). *CollegeSource*, 653 F.3d at 1074-1076. Plaintiffs do not allege that any of the Defendants are subject to general jurisdiction in Nevada. Rather, they argue that the Court has specific personal jurisdiction over the Defendants.

Specific jurisdiction is analyzed under a three-prong test: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or a resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *CollegeSource*, 653 F.3d at 1076. In cases involving tortious conduct, the court employs a purposeful direction analysis and applies an "effects test" that "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* at 1076-77. The effects test requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* The express aiming requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct that was targeted at a plaintiff whom the defendant knows to be a resident of the forum state. *Id.*, citing *Doe Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Plaintiffs argue that the effects test is satisfied in this case because the Defendants' alleged conduct in misappropriating Plaintiffs' confidential and proprietary information, including inventions protected by patents, were directed at Nevada corporations, and that Defendants knew

6

Plaintiffs would suffer harm in Nevada – their place of incorporation. Plaintiffs rely on *Consipio Holding, BV v. Carlberg*, 128 Nev. Adv. Op. 43, 282 P.3d 751 (2012) in which the plaintiff shareholders brought a derivative action on behalf of the corporation against its former CEO and president, and against officers and directors of the corporation who allegedly assisted the former CEO and president in wrongfully obtaining significant loans from the corporation for himself and entities he controlled. The corporation was a Nevada corporation, whose principal place of business was in Spain. The individual defendants were residents of European nations. The Court noted that Nevada's long arm statute, NRS 14.065(1), permits personal jurisdiction over nonresident defendants unless the exercise of jurisdiction would violate due process of law. 282 P.3d at 754. In holding that Nevada had personal jurisdiction over the defendants, the Court stated:

> When officers or directors directly harm a Nevada corporation, they are harming a Nevada citizen. By purposefully directing harm toward a Nevada citizen, officers and directors establish contacts with Nevada and 'affirmatively direct[] conduct' toward Nevada. (citation omitted) Further, officers or directors 'caus[e] important consequences' in Nevada when they directly harm a Nevada corporation. (citation omitted) When a cause of action arises out of an officer's or director's purposeful contact with Nevada, a district court can exercise personal jurisdiction over that officer or director.

*Consipio*, 282 P.3d at 755.

In so holding, the Court distinguished *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In *Shaffer,* a shareholder of Greyhound Corporation brought a derivative action in Delaware against present and former officers and directors of Greyhound for allegedly causing the corporation to be held liable for substantial damages in a private antitrust suit. Greyhound was a Delaware corporation whose principal place of business was located in Arizona. The anti-trust activities occurred in Oregon. In order to obtain jurisdiction over the defendants, the plaintiff invoked Delaware's sequestration statute which allowed the court to sequester a defendant's property in the state until the defendant entered a general appearance in the Delaware action to defend it. The Delaware court sequestered the defendants' stock in the corporation which the court construed to be located in Delaware. The Supreme Court noted that there was no Delaware statute that expressly gave its courts personal jurisdiction over officers or directors of a Delaware corporation or which provided that acceptance of a directorship constitutes implied

consent to personal jurisdiction in Delaware.  In holding that the Delaware court did not have personal jurisdiction over the nonresident officers and directors, the Supreme Court stated:

> Appellants have simply nothing to do with the State of Delaware. Moreover, appellants had no reason to expect to be haled before a Delaware court.  Delaware, unlike some States, has not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State.  And "[i]t strains reason . . . to suggest that anyone buying securities in a corporation formed in Delaware 'impliedly consents' to subject himself to Delaware's jurisdiction on any cause of action."  (citation omitted) Appellants, who were not required to acquire interests in Greyhound in order to hold their positions, did not by acquiring those interests surrender their right to be brought to judgment only in States with which they had "minimum contacts."

*Shaffer*, 433 U.S. at 216, 97 S.Ct. at 2586.

*Consipio* distinguished *Shaffer* on the grounds that it involved "indirect harm" to the corporation, whereas the officer's and directors' actions in *Consipio* involved "direct harm" to the Nevada corporation.

Defendants argue that this Court is not bound by *Consipio*, that it is contrary to *Shaffer* and should not be followed.  Defendants cite *Schmitz v. Xiqing Dio*, 2013 WL 5965882 (D.Wyo. 2013) in which shareholders brought a derivative action against the officers and directors of a Wyoming corporation whose principal place of business was in China.  The defendant officers and directors were residents of China, Hong Kong, or Africa.  The plaintiffs alleged that the defendants breached their duties to the corporation by failing to correct deficiencies in the corporation's financial records as requested by its independent auditor.  The defendants, instead, fired the auditor which led to an SEC investigation into securities fraud.  As a result, the value of the corporation's stock plummeted.  In holding that the District of Wyoming lacked personal jurisdiction over the defendants, the court found *Shaffer* to be on point and controlling.  The court also rejected the Nevada Supreme Court's effort to distinguish *Shaffer* as follows:

> Specifically, the *Consipio* court rather confusingly states, "However, *Shaffer* does not prohibit a state court from exercising jurisdiction over nonresident officers and directors who directly harm a corporation that is incorporated in that state, even when the state does not have a director consent statute. *Id.* at 755.  The Supreme Court directly addressed that issue and held the opposite of the *Consipio*

|   |   |
|---|---|
| 1 | court. The nonresident officers and directors in *Shaffer* were alleged to have directly harmed Greyhound, which was incorporated in |
| 2 | Delaware, when Delaware did not have a director consent statute. *Id.* at 189-90, 214. The Supreme Court held that the nonresident officers |
| 3 | and directors did not have sufficient contacts with, or purposely avail themselves of the privilege of conducting business within, the forum |
| 4 | state of Delaware. *Id.* at 213-16. Accordingly, the *Concipio* court's interpretation of *Shaffer* and reasoning for finding personal |
| 5 | jurisdiction is questionable and unconvincing. |

*Schmitz*, 2013 WL 5965882, at *10.

Like the district court in *Schmitz v. Xiqing Dio*, the undersigned believes that *Consipio Holding, BV v. Carlberg* is contrary to the United States Supreme Court's decision in *Shaffer v. Heitner*, and that a court does not have personal jurisdiction over nonresident shareholders based solely on the fact that the plaintiff is incorporated in the forum.

Plaintiffs, however, also rely on the consent to jurisdiction provision in Section 8.5 of Andes Industries' Bylaws. Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound. *Holland American Line, Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 458 (9th Cir. 2007), citing *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994) and *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982). Contractual forum-selection clauses are presumptively valid, absent some compelling and countervailing reason, such as that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-15, 92 S.Ct. 1907-1914-16 (1972). The Supreme Court has upheld forum-selection clauses contained in adhesion contracts where there was no evidence that the provision was actually bargained for. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 11 S.Ct. 1522 (1991). A forum selection clause is unenforceable if (1) its inclusion in the agreement was a product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum where the suit is brought. *Peterson v. Boeing* Co., 715 F.3d 276, 280 (9th Cir. 2013); *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004); and *R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

Despite the substantial body of case law supporting the enforceability of contractual forum-selection clauses, courts have only recently addressed whether a forum-selection provision in a corporation's bylaws or articles of incorporation is enforceable against shareholders who arguably had no notice of it and therefore did not consent to the provision.  In *Galaviz v. Berg*, 763 F.Supp.2d 1170 (N.D.Cal. 2011), shareholders of Oracle corporation brought suit against directors of the corporation who allegedly caused Oracle to make fraudulent sales of software and licenses to the U.S. Government and failed to apply certain discounts to which the government was entitled. Before the plaintiffs' lawsuits were filed, but after the purported overbilling scheme had been ongoing for several years, the board of directors amended Oracle's bylaws to add a provision which stated that "[t]he sole and exclusive forum for any actual or purported derivative action brought on behalf of the Corporation shall be the Court of Chancery in the State of Delaware."  763 F.Supp.2d at 1172.  The court noted that under contract law, a party's consent to a written agreement may serve as consent to all the terms therein, whether or not all of them have been specifically negotiated or even read.  *Id.* at 1174.  The court held, however, that the clause "was unenforceable because it was unilaterally adopted by the directors, who are defendants in this action, after the majority of the purported wrongdoing is alleged to have occurred, and without the consent of existing shareholders who acquired their shares when no such bylaw was in effect."  *Id.*

In *In re Facebook, Inc. IPO Securities and Derivative Litigation*, 922 F.Supp.2d 445, 459-463 (S.D.N.Y. 2013), the plaintiffs filed shareholder derivative actions in New York against officers and directors of Facebook.  Prior to the filing of these lawsuits, the directors of the corporation adopted a "Restated Certification of Incorporation" which provided that the Delaware Court of Chancery would be the sole and exclusive forum for any derivative action or proceeding brought on behalf of the corporation, or asserting any claim of breach of fiduciary duty by any director, officer, employee or agent of the corporation to the corporation or its shareholders.  The court stated that the forum selection clause was adopted by the board of directors and approved by the pre-IPO stockholders in accordance with Delaware law and therefore did not constitute an impermissible unilateral modification.  The court held that the clause was not enforceable as against plaintiffs' lawsuits, however, because their claims arose out of the corporation's initial

10

public offering which took place prior to the date that the forum-selection provision became effective.

In *North v. McNamara*, — F.Supp.3d —, 2014 WL 4684377 (S.D.Ohio 2014), the court upheld the application of a forum-selection clause in a corporation's bylaws to lawsuits brought by shareholders who acquired their shares before the provision was adopted and whose claims were also based on conduct that occurred prior to the provision's adoption. In so holding, the court relied on *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del.Ch. 2013) in which the court rejected the argument that a forum-selection clause was unenforceable because it was unilaterally adopted by the board of directors, without the express consent of the existing shareholders:

> Recognizing that the bylaws are part of a larger contractual framework between the shareholders and the corporation, the court relied on the fact that shareholders are on notice in the certificates of incorporation and in Delaware law under which the corporations are organized that the board has the authority to unilaterally adopt bylaws that are subject to such regulation, including forum-selection clauses. In reaching that conclusion, the court distinguished *Galaviz*, stating: "the conclusion reached ... in *Galaviz* ...–that board adopted bylaws are not like other contracts because they lack the stockholders' assent– rests on the failure to appreciate the contractual framework established by the DGCL for Delaware corporations and their stockholders." Accordingly, the court held that when stockholders "have authorized a board to unilaterally adopt bylaws, it follows that the bylaws are not contractually invalid simply because the board-adopted bylaw lacks the contemporaneous assent of the stockholders" and to find otherwise would contradict the plain terms of the contractual framework chosen by the shareholders.

2014 WL 4684377, at *4.

The Andes Bylaws state that they were adopted by the directors on June 23, 2000. Plaintiffs' complaint does not state when Defendants Kun Te Yang, Dennis Lan, and Polar Star acquired shares in Andes or PCT. Under *Galaviz*, the forum-selection clause is arguably not enforceable if it was adopted after the Defendants acquired their shares. Under *North v. McNamara*, however, the provision is enforceable even if Defendants acquired their shares before the provision was adopted.

Broadly read, Section 8.5 of the Andes Bylaws provides that shareholders consent to jurisdiction in Nevada in regard to claims arising out of their status as shareholders. In this case,

Plaintiffs allege that Defendant shareholders, including Mr. Lan as a *de facto* shareholder, breached their fiduciary duties to the corporation by misappropriating its trade secrets or confidential and proprietary information. Courts have held that *majority* shareholders owe a fiduciary duty to minority shareholders in a closely held corporation. *Rappaport v. Soffer*, 2012 WL 2522069, *3 (D.Nev. 2012), citing *Spitzmesser v. Tate Synder Kimsey Architects, LTD.*, 2011 WL 2552606, *2 (D.Nev. 2011); and *Carstarphen v. Milsner*, 693 F.Supp.2d 1247, 1249-50 (D.Nev. 2010). *See also In re Amerco Derivative Litigation*, 252 P.3d 681, 700, n. 11, 127 Nev. Adv. Op. 17 (2012), citing *Jones v. H.F. Ahmanson & Company*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464, 471 (1969) (acknowledging that majority shareholders "have a fiduciary duty to the minority and to the corporation"). A fiduciary duty may also be imposed on minority shareholders who exercise control over the corporation. *See Beach v. Briganti*, (unpublished decision) 2014 WL 5141651, *5 (Cal.App. 2014). There is no allegation in the complaint that Defendants, individually or collectively, were majority shareholders or that they exercised control over Andes or PCT. Plaintiffs allege, instead, that "Andes operated much like a partnership, with no shareholder holding a majority position" and that "most substantial business decisions for PCT were addressed through communications between Mr. Lan and Mr. Youtsey." *Complaint (#1)*, ¶ 46. It is not clear to the undersigned that Plaintiffs have a viable cause of action against the Defendants for breach of fiduciary duties as shareholders which would support personal jurisdiction over them in Nevada pursuant to Section 8.5 of the Andes Bylaws.

Plaintiffs seek to engage in extensive discovery in an effort to establish personal jurisdiction over eGtran, as the alter ego, agent or co-conspirator of the other defendants. *See Motion (#39), pgs. 19-21.* Personal jurisdiction over eGtran is dependent on whether the Court has personal jurisdiction over the co-defendants. If the Court determines that it does not have personal jurisdiction over the other defendants (regardless of whether they are actually served or enter an appearance in this action), then there will be no need for Plaintiffs to conduct jurisdictional discovery regarding Defendant eGtran under theories of alter ego, agency or conspiracy. If, however, this Court has personal jurisdiction over the co-defendants, then some jurisdictional discovery with respect to Defendant eGtran will be appropriate. It is in the interest of judicial

economy, and in avoiding potentially burdensome and unnecessary discovery, for the Court to first determine whether there is a valid basis for the exercise of personal jurisdiction over the co-defendants before it grants jurisdictional discovery as to Defendant eGtran.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (#35, #38) is **denied**, without prejudice, to renew the motion if the District Court determines that the Court has personal jurisdiction over the other Defendants.

DATED this 19th day of November, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge